```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISCTRICT OF TENNESSEE
                             WESTERN DIVISION
```

|  |  |
|---|---|
| PATRICK WEEKS, BARBARA K. WEEKS, ALICE K. ALT, and MATTHEW A. ALT, ) ) ) ) ) |  |
| Plaintiffs, ) ) |  |
| v. ) ) | No. 20-cv-2709-TMP |
| DAVARIOUS SANDS, WESTERN FLYER EXPRESS, LLC, and JOHN DOE COMPANY, ) ) ) ) |  |
| Defendants. ) ) |  |

**ORDER DENYING DEFENDANT'S MOTION FOR MEDICAL EXAMINATION**

Before the court is defendant Western Flyer Express, LLC's Motion for Medical Examination of Plaintiff Patrick Weeks, filed on March 18, 2021. (ECF No. 41.) Weeks filed a response objecting to the motion on March 31, 2021. (ECF No. 42.) The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 26.) For the reasons below, the motion for an independent medical examination is DENIED without prejudice.

## I.   FINDINGS OF FACT

This is a personal injury case. Plaintiffs Patrick Weeks, Barbara K. Weeks, Alice K. Walt, and Matthew A. Walt filed their complaint in Tennessee state court on July 9, 2020, naming

Davarious Sands, Western Flyer Express, LLC ("Western Flyer"), and John Doe Company as defendants. (ECF No. 1-2.) Plaintiffs allege that on July 13, 2019, a vehicle driven by Sands, an employee of Western Flyer, negligently struck a car driven by Weeks, seriously injuring both him and Alice K. Alt, a passenger in the car. (ECF No. 1-2.) Plaintiffs further allege that in addition to being vicariously liable for Sands's alleged negligence by virtue of being his employer, Western Flyer negligently entrusted Sands with the vehicle. (ECF No. 1-2.) Defendants removed this case to federal court on September 22, 2020. (ECF No. 1.)

According to the complaint, Weeks "sustained injuries to his head, chest, neck, back, hips, and adjacent anatomical structures which required treatment." (ECF No. 1-2 at 13.) In his responses to Defendants' written discovery requests, served on January 12, 2021, Weeks stated that he:

> sustained multiple injuries as a result of the subject motor vehicle crash, including injuries to his head, possible concussion, bruising and contusions over his body, back, chest, abdomen, feet, legs, left knee, cervical spine, thoracic spine, lumbar spine, left-sided pain from shoulder to below the waist, hand tremors, occasional slurred speech, bruising and swelling over various portions of his body, facial swelling, issues with memory, word recall, short-term memory and PTSD. In addition, since the crash, [Weeks] has suffered from gout or gouty arthritis, of which he had no previous history.

(ECF No. 41-2 at 8-9.) He also stated that he has only received conservative medical care for his injuries and that he has only

sought treatment in Arkansas and Memphis. (ECF No. 41-2 at 9-10.) He continues to be treated by several providers, including Kenneth P. Seiter, DPM, and doctors with the Seubold Chiropractic Clinic and Fort Smith Wellness Center. (ECF No. 41-2 at 9.) Additionally, Weeks has undergone two neuropsychological evaluations, one by Gary T. Souheaver, Ph.D., and the other by A.J. Zolten, Ph.D.[1] (ECF No. 42 at 2.) Both examinations occurred in Little Rock, Arkansas. (ECF No. 42 at 2.) Weeks saw each examiner a single time and did not receive treatment from either. (ECF No. 42 at 2.)

Western Flyer argues in its motion that another neuropsychological examination is necessary because Dr. Souheaver's and Dr. Zolten's reports are inconsistent.[2] (ECF No. 41 at 2.) Further, Western Flyer argues that Weeks placed his mental and physical health in controversy by alleging injuries including "injuries to his head, possible concussion, . . . occasional slurred speech, . . . issues with memory, word recall, short-term memory and PTSD" (ECF No. 41 at 2.) In its motion, Western Flyer requests that Weeks be examined by Dr. John Linck, Ph.D. (ECF No. 41 at 1.) Dr. Linck is an associate professor in

---

[1]According to Weeks, he saw the two examiners at the direction of Am Trust North America, his employer's worker's compensation insurer. (ECF No. 42 at 2.) The evaluation with Dr. Souheaver occurred on January 29, 2020, and the evaluation with Dr. Zolten occurred on July 29, 2020. (ECF No. 42 at 2.)

[2]Western Flyer does not explain how the reports are inconsistent in its motion.

the Neuropsychology Section of the Department of Psychiatry & Behavioral Sciences at the University of Oklahoma and is based in Oklahoma City, Oklahoma. (ECF No. 41-1 at 1.)

Weeks, who resides in Fort Smith, Arkansas, argues that an additional neuropsychological examination is not necessary because he has already undergone two neuropsychological examinations. (ECF No. 42 at 2.) Further, he argues that the examination would be unreasonable because it would require him to travel nearly 370 miles round trip from his home in Arkansas to Oklahoma City, a city located more than 450 miles from the forum where this case is pending. (ECF No. 42 at 4.) Additionally, Weeks argues that Western Flyer's proposal for the examination omitted information regarding the "conditions[] and scope of the examination" as required by Federal Rule of Civil Procedure 35. (ECF No. 42 at 3.) Finally, Weeks argues that, in the event this court orders the examination by Dr. Linck, several conditions should be imposed, namely that Weeks only be required to discuss the manner of the collision in general terms, that Weeks have the option to be accompanied by a companion (not associated with counsel for Weeks) to the examination for support and observation, that nobody else be allowed to attend the examination, that the examination take place over only one day for no more than four hours, and that Western Flyer reimburse Weeks for all travel-related expenses within seven days of the examination. (ECF No. 42 at 5-6.)

## II.  ANALYSIS

Federal Rule of Civil Procedure 35 supplies the standard a court should apply when a party requests a medical examination of the opposing party. The rule provides:

> (a) Order for an Examination.
>
> (1) In General. The court where the action is pending may order a party whose mental or physical condition - including blood group - is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> (2) Motion and Notice; Contents of the Order. The order:
>
> (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>
> (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a). "A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964); Miller ex rel. Miller v. Dacus, No. 03-2701, 2004 WL 2905392, at *1 (W.D. Tenn. Apr. 22, 2004) ("The Supreme Court made clear . . . that while some cases are close calls, a plaintiff in a negligence action who asserts mental or physical injury places the injury in controversy and establishes good cause for an

independent medical exam to determine the extent of the claimed injury.") (citing Schlagenhauf, 379 U.S. at 119).

Courts have recognized that even when a defendant in a personal injury case has a record of plaintiff's medical history, the defendant may be prejudiced if denied an opportunity to independently examine the plaintiff. See Funez v. Wal-Mart Stores E., LP, No. 1:12-CV-0259, 2013 WL 123566, at *7 (N.D. Ga. Jan. 9, 2013) ("An independent medical examination is particularly appropriate here because Defendant would be prejudiced in contesting the nature and extent of Plaintiff's injuries by having to rely exclusively on Plaintiff's medical records and testimony from her treating physicians."); Pauley v. United States, No. 3:12-CV-08558, 2013 WL 6195730, at *2 (S.D. W. Va. Nov. 27, 2013) (citing Funez with approval and other cases that reached the same conclusion). In this personal injury negligence case, Weeks seeks damages for physical and mental injuries he claims to have suffered because of the collision. (ECF Nos. 1-2 at 13; 41-2 at 8-9.) That Weeks has already undergone two neuropsychological examinations (neither of which was ordered by the defendants as part of this litigation and are allegedly "inconsistent") is not dispositive. See Ford v. Am. River Transp. Co., No. 5:11CV-00094-R, 2012 WL 4049467, at *4 (W.D. Ky. Sept. 13, 2012) ("Whether or not a plaintiff has previously submitted to an [independent medical examination] is immaterial if the second exam is 'neither redundant

nor invasive.'") (citing Mitchell v. Iowa Interstate R.R. Ltd., No. 07-1351, 2009 WL 2431590 at *2 (C.D. Ill. Aug. 5, 2009)). Therefore, the court finds that Weeks has sufficiently placed his physical and mental health in controversy and Western Flyer has good cause to have him undergo an additional medical examination.

However, "[t]he decision on whether to issue a Rule 35 order for a mental examination 'lies soundly within the court's discretion'" and includes consideration of the location of the examination. Beightler v. Suntrust Banks, Inc., No. 2:07-cv-02532-DV, 2008 WL 1984508 at *2 (W.D. Tenn. Apr. 30, 2008) (quoting Hodges v. Keane, 145 F.R.D. 332, 334 (S.D.N.Y. 1993)); see Vandergriff v. Red Robin Int'l, Inc., No. 1:14-cv-177-SKL, 2016 WL 1735857, at *2 (E.D. Tenn. May 2, 2016) ("Courts have interpreted Rule 35 to give them broad discretion in determining the details of the [independent medical examination], such as location."). The general rule is that mental or physical examinations should occur in either the district where the case is pending or the district where the plaintiff resides. See Plaintiff B v. Francis, No. 5:08CV79-RS/AK, 2009 WL 1360853, at *1 (May 12, 2009); Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 106-07 (E.D.N.C. 1993) (denying a motion for a mental examination where the requested examiner was in a city outside of the forum chosen by plaintiff and was "a substantial distance from his home"); but see Vandergriff, 2016 WL 1735857, at *2-3 ("[T]hat the requested

[independent medical examination] is outside of the judicial district in which the case is pending, by itself, does not render the request unreasonable."). One important policy rationale behind this presumption is that it "ensures that the examining specialist is available as an expert witness at trial." Ornelas v. S. Tire Mart, LLC, 292 F.R.D. 388, 400 (S.D. Tex. 2013) (citing McDonald v. Southworth, No. 1:07-cv-217-JMS-DFH, 2008 WL 2705557, at *4 (S.D. Ind. July 10, 2008)). "Although the party seeking the examination is usually permitted to select the physician to conduct it, this latitude is not without limit and good cause must be shown for requiring an examination by a physician outside the judicial district where the action is pending." Faynik v. Magical Cruise Co., No: 6:17-cv-1282-Orl-37TBS, 2018 WL 7360664, at *1 (M.D. Fla. Aug. 2, 2018) (citing Plaintiff B, 2009 WL 1360853, at *1); see also Ford, 2012 WL 4049467, at *5.

Based on the undersigned's research, it appears that neither the Sixth Circuit nor this court has addressed how to determine the location of an independent medical examination. See New v. Rush Truck Leasing, No. 17-134-HRW, 2018 WL 3236991, at *2 (E.D. Ky. July 2, 2018) ("There is a dearth of caselaw from . . . the Court of Appeals for the Sixth Circuit regarding the factors to consider in determining the location of an [independent medical examination]. Yet, cases from other circuits reveal that common sense and a balancing approach are the guiding principles.");

Vandergriff, 2016 WL 1735857, at *2 ("The parties have not submitted case law from this Court or from . . . the Sixth Circuit . . . regarding the factors to consider in determining the location of an [independent medical examination], and this Court has found none in its research."). That said, the Eastern District of Tennessee has compiled a list of factors that courts commonly consider when analyzing proposed Rule 35 medical examinations that would be "performed outside of the forum district and state." Vandergriff, 2016 WL 1735857, at *2-3 (collecting cases that are "instructive as to the various factors that courts typically consider and weigh in determining the location of an [independent medical examination]"). The factors suggested by the Eastern District are: (1) "the location of the physician of choice," (2) "the undue burden or hardship on the plaintiff based on the plaintiff's medical conditions," (3) "the amount and time of travel that the plaintiff has been willing to undertake on his or her own while burdened with the physical conditions," (4) "the specific evidence from the plaintiff's doctor of the harm that would result from the travel to the [independent medical examination]," and (5) "the specific medical expertise needed that is not available locally." Id. (citations omitted).

Western Flyer has requested that this court order Weeks to attend a neuropsychological examination in Oklahoma City (located in the Western District of Oklahoma), nearly 400 miles round trip

- 9 -

from his home in Arkansas, all while the matter is pending in the Western District of Tennessee. The court finds that an order directing Weeks to attend a neuropsychological examination in Oklahoma City is not justified. It is true that Weeks states that he has only sought conservative treatment for his injuries, implying that his conditions would likely not pose an undue burden on any travel, and that he has visited hospitals across Arkansas and in Memphis. (ECF No. 41-2 at 8-10.) However, Western Flyer has not articulated why a neuropsychological examination in Oklahoma City (and the accompanying 370-mile trip) is necessary in light of "specific medical expertise needed that is not available locally." Vandergriff, 2016 WL 1735857, at *3. Weeks's chosen forum is the Western District of Tennessee, a forum that hosts the University of Tennessee Health Science Center, Methodist University Hospital, and Baptist Memorial Hospital, among other established medical institutions.[3] See Faynik, 2018 WL 7360664, at *2 (denying a Rule 35 motion for an out-of-forum examination because defendant's argument that there were limited neurologists in Orlando was "inconsistent with the presence of numerous hospitals, medical

---

[3] The undersigned recognizes that Memphis, Tennessee, is farther from Weeks's hometown of Fort Smith, Arkansas, than Oklahoma City. However, unlike Oklahoma City, Weeks (and his co-plaintiffs) selected Memphis as the chosen forum and therefore he has implicitly consented to travel to this locale. See Ornelas, 292 F.R.D. at 399–400 ("The general rule is that a plaintiff who brings suit in a particular forum may not avoid appearing for an examination in that forum.").

centers, and the University of Central Florida College of Medicine - all located in [the] large metropolitan area"); Plaintiff B, 2009 WL 1360853, at *2 (denying a Rule 35 motion that would require plaintiffs to fly to Maryland because, "with two major universities and several urban areas within the Northern District of Florida, the Court is certain that another psychiatrist can be designated who can adequately examine these four plaintiffs"); Blount, 162 F.R.D. at 107 ("It is difficult for the court to believe that there are no qualified neurologists in the Eastern District of Virginia, where Plaintiff resides, or in the Eastern District of North Carolina, where this action was brought."). Western Flyer has not provided the court with any evidence that there is not a qualified neuropsychologist within the Western District of Tennessee who is "similar in stature, training or quality to those in" Oklahoma City. Rainey v. Wal-Mart Stores, Inc., 139 F.R.D. 94, 95 (W.D. La. 1991). Moreover, as Weeks points out, Oklahoma City is located more than 450 miles from this district. See Ornelas, 292 F.R.D. at 400. Because Western Flyer has "neither made an argument that the physician they had selected to conduct the examination was qualified uniquely in some way, nor [given] 'any other reason for the court to deviate from the general rule of allowing the examination in the forum chosen by the plaintiff,'" the court finds that Western Flyer's request for an examination by Dr. Linck in Oklahoma City is not well-taken. Koger v. Norfolk S. R.R. Co., No.

- 11 -

1:08-00909, 2009 WL 10688331, at *3 (S.D.W. Va. July 24, 2009) (quoting Blount, 162 F.R.D. at 107) (limiting the location of Rule 35 examinations to the judicial district where the case was pending, despite being "essentially . . . equivalent in distance" to the location of defendant's proposed examiner, because the plaintiff has an "expectation . . . to remain within the forum in which he filed the instant action.").

### III. CONCLUSION

As stated above, although Western Flyer has demonstrated good cause for an additional independent medical examination of Weeks, it has not established good cause for this court to order that Weeks attend an examination in Oklahoma City. Therefore, the motion is DENIED. However, this order does not foreclose Western Flyer from obtaining an independent medical examination of Weeks by a medical examiner located within the Western District of Tennessee, the Western District of Arkansas (where Weeks resides), or a location in close proximity to those districts. If the parties are unable to agree on the location of the medical examination, Western Flyer may file a motion at that time to bring the matter before the court.

IT IS SO ORDERED.

/s/ TU M. PHAM
Tu M. Pham
Chief United States Magistrate Judge

April 6, 2021

- 12 -

- 13 -

Date