IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| PATRICK WEEKS, | ) | |
| BARBARA K. WEEKS, | ) | |
| ALICE K. ALT, and | ) | |
| MATTHEW A. ALT, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 20-2709-TMP |
| | ) | |
| v. | ) | |
| | ) | |
| DAVARIOUS SANDS, | ) | |
| WESTERN FLYER EXPRESS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Before the court is defendant Western Flyer Express's ("WFX") Motion for Summary Judgment, filed on September 21, 2021. (ECF No. 64.) For the below reasons, WFX's Motion for Summary Judgment is GRANTED.

I.    FINDINGS OF FACT

Defendant Davarious Sands applied online to be a truck driver with WFX in early July 2019. (ECF No. 64-3 at 2-3.) Sands had been told to apply to WFX by one of its current drivers, who told Sands the company had a comparatively more favorable lease-purchase program than U.S. Express, his employer at the time. (ECF No. 74 at 1.) The day after applying, Sands received an email from WFX

inviting him to attend a driver orientation at the company's headquarters in Oklahoma City, Oklahoma. (ECF No. 64-3 at 3-5.) A later email confirmed this invitation and congratulated him, stating "Welcome to WFX family." (ECF No. 71-4 at 1.) He was told to bring "clothing/bedding for a minimum of 14 to 21 days on the road" to orientation and given times and dates for the program. (ECF No. 74 at 2.)

WFX considers the invitation to orientation to be a "conditional offer" of employment.[1] (ECF No. 64-4 at 2; ECF No. 72 at 12.) Applicants must go through an "initial screening process" in order to receive an invitation. (ECF No. 71-2 at 17.) At the orientation, applicants are required to pass a drug and alcohol test, a practical road test, and a practical examination. (ECF No. 64-4 at 2-3.) Prospective drivers receive meals and lodging while attending orientation, and if a prospective driver successfully completes the orientation, they are officially offered employment

---

[1]The plaintiffs dispute essentially all testimony WFX offered in this case, arguing that Beau Mosley, WFX's Executive Vice President of Safety and Rule 30(b)(6) designee, did not have "first-hand or even contemporaneous knowledge of the orientation prior to his joining WFX on June 1, 2021." See, e.g., (ECF No. 72 at 2.) However, Mosley also testified that "the recruiting process itself, from [his] understanding, is very similar now as it was - - as it was in 2019 . . . the actual recruiting process itself hasn't changed or been altered to [his] knowledge." (ECF No. 64-4 at 10.) The plaintiffs have not provided any evidence that contradicts Mosley's testimony on these issues.

by WFX. (ECF No. 74 at 3.) Sands accepted the invitation and WFX paid for a rental car for him to drive from his home in Georgia to Oklahoma City. (ECF No. 64-3 at 5.) WFX commonly covers the transportation costs for orientation attendees, including airfare, rental cars, and bus tickets. (Id.) When providing a rental car, WFX selects the class of vehicle that should be provided rather than the exact model. (Id. at 10-11.) Typically, the company specifies that "full-sized vehicle[s]" be provided. (ECF No. 71-2 at 26.) Sands picked up his vehicle, a 2019 Dodge Charger, from the Chattanooga Airport branch of National Rental Car on July 12, 2019, and departed for Oklahoma City the next morning. (ECF No. 64-3 at 6-8.)

Sands's journey to Oklahoma City was approximately 800 miles long. (ECF No. 68.) He stopped for gas west of Nashville, Tennessee at a station off I-40. (ECF No. 72-3 at 15.) At some point after entering Fayette County, Tennessee, Sands rear-ended a 2018 Jeep Renegade driven by plaintiff Patrick Weeks and carrying plaintiff Alice Alt as a passenger. (ECF No. 1-2 at 3.) The Renegade was pushed off the interstate and rolled to a stop. (Id.) After first responders arrived, Sands was taken to a hospital somewhere outside of Memphis, Tennessee, where he emailed WFX and urgently requested a call. (ECF No. 64-3 at 10-11; ECF No. 71-4 at 1.) A WFX representative responded and Sands informed them of the accident.

- 3 -

(ECF No. 64-3 at 10.) The representative told Sands to "try to get to Oklahoma" where they would sort things out the next day. (Id. at 12.) Sands then called a Lyft from the hospital and spent the night of July 13 in a nearby hotel. (Id. at 13.) The next morning, he bought a Greyhound bus ticket to Oklahoma City. (Id. at 14.) He arrived there later that day and was taken to a hotel in a WFX van. (Id.)

On Monday, July 15, Sands went to WFX headquarters for orientation. (Id. at 15.) Around fifteen to twenty minutes into the programming, Sands was brought into the office of a WFX safety manager, where he was told WFX "wasn't going to hire [him] . . . because of the wreck." (Id. at 15-16.) At 8:43 a.m., a WFX employee updated Sands's internal file with the following entry: "Candidate rear-ended V2 in rental car while en route to orientation. Informed WFX Recruiting that he was in accident but did not clarify that he rear-ended V2 and was cited for following too close. NOT ELIGIBLE FOR HIRE." (ECF No. 64-5.) Roughly two hours later, his file was updated again, noting that a "Greyhound ticket has been ordered." (Id.) WFX admits that it purchased Sands a Greyhound ticket home and then dismissed him from orientation. (ECF No. 74 at 3.) Sands took the Greyhound bus back to Georgia later that day. (ECF No. 64-3 at 17-18.)

The plaintiffs filed the present case on July 9, 2020 in Tennessee state court, after which it was removed to federal district court on September 20, 2020. (ECF No. 1.) They listed Sands, WFX, and multiple insurance companies as defendants and sought damages for injuries sustained in the crash. (Id.) They brought claims of common law negligence against Sands and claimed Sands's negligence was imputed to WFX "by virtue of the doctrine(s) of agency, apparent agency, employer-employee relations, master-servant, *respondeat superior*, joint venture, contract and/or vicarious liability." (ECF No. 1-2 at 11.) They further alleged that WFX had negligently entrusted the rental car to Sands. (Id. at 11-12.) On January 7, 2021, the parties consented to the jurisdiction of the magistrate judge, and the case was assigned to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 26.)

The case proceeded through discovery without issue. On September 16, 2021, the parties stipulated to the dismissal of the plaintiffs' negligent entrustment claim against WFX. (ECF No. 62.) Five days later, WFX filed the present Motion for Summary Judgment on the vicarious liability claim, which is now the only remaining claim against the company. (ECF No. 64.) The plaintiffs filed their response and a Statement of Undisputed Material Facts on October

- 5 -

19, 2021, and an amended response that same day. (ECF Nos. 69-72.) WFX replied to these responses on October 27, 2021. (ECF Nos. 73-74.) The plaintiffs were then granted leave to file a sur-reply on November 1, 2021, which they filed the next day. (ECF Nos. 78-80.)

## II.   CONCLUSIONS OF LAW

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cty. Bd. of Educ.,

- 6 -

330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible, unsworn hearsay in deciding a motion for summary judgment. Tranter v. Orick, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016).

WFX has moved for summary judgment on the plaintiffs' vicarious liability claim. First, WFX argues that it is not liable under a theory of *respondeat superior*, since Sands was not an employee at the time of the accident and thus could not have been operating within the scope of his employment when the accident occurred. (ECF No. 64-2 at 6, 11.) Second, WFX argues that it is not liable under any agency theory, since no agency relationship between the company and Sands was ever formed. (Id. at 9, 13.)

- 7 -

**B.   Employer-Employee Relationship**

Tennessee law recognizes the common law doctrine of *respondeat superior*, where "an employer may be held vicariously liable for torts committed by its employee within the course and scope of [their] employment." <u>Gunter v. Estate of Armstrong</u>, 600 S.W.3d 916, 923 (Tenn. Ct. App. 2019) (quoting <u>Heflin v. Iberiabank Corp.</u>, 571 S.W.3d 727, 735 (Tenn. Ct. App. 2018)).[2] This is "a form of strict liability" that "neither requires the plaintiff to prove fault on the part of the employer nor allows the employer to exonerate himself by proving his freedom from fault." <u>Hamilton v. Carell</u>, 243 F.3d 992, 1001-02 (6th Cir. 2001) (quoting <u>Konradi v. United States</u>, 919 F.2d 1207, 1210 (7th Cir. 1990)). Instead, liability is dependent on three elements: "(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." <u>Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.</u>, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). Where no genuine issue of material fact

---

[2]Since the court's jurisdiction in this case is based on the complete diversity of the parties, state substantive law applies. <u>Lukowski v. CSX Transp., Inc.</u>, 416 F.3d 478, 484 (6th Cir. 2005) ("A federal court sitting in diversity applies the substantive law of the state in which it sits.") (quoting <u>Hayes v. Equitable Energy Res. Co.</u>, 266 F.3d 560, 566 (6th Cir. 2001)). Neither party disputes that Tennessee substantive law applies.

exits, the court may determine employment status as a matter of law. Bryson v. Middlefield Volunteer Fire Dep't, Inc., 656 F.3d 348, 352 (6th Cir. 2011). Tennessee courts have generally defined the "employer-employee relationship" by contrasting it with the independent contractor relationship. Several factors are used to differentiate the two relationships, including the "(1) right to control conduct of work, (2) right of termination, (3) method of payment, (4) whether or not the worker furnishes his own helpers, (5) whether or not the worker furnishes his own tools, (6) self-scheduling of work hours and (7) freedom to render services to other entities." Goodale v. Langenberg, 243 S.W.3d 575, 582-83 (Tenn. Ct. App. 2007). The "right to control" is seen as primary, even though it is not dispositive. Id. at 583. The right to control is not just the right to control the employee's objectives; the purported employer must have the right to control the "details of performance and methods used to achieve" the desired objective, not just "a right to supervise" the work or a right to "see that the end result conforms to plans and specifications[.]" Wolney v. Emmons, No. 02A01-9508-CV-00169, 1997 WL 74619, at *3 (quoting Lindsey v. Smith & Johnson, Inc., 601 S.W.2d 923, 925 (Tenn. 1980)). Evidence of how the parties viewed their relationship is also relevant to the inquiry. Weary v. Cochran, 377 F.3d 522, 525 (6th Cir. 2004) (citing Eyerman v. Mary Kay Cosmetics, Inc., 967

- 9 -

F.2d 213, 218 (6th Cir. 1992); <u>Wolcott v. Nationwide Mut. Ins.</u>
<u>Co.</u>, 884 F.2d 245, 251 (6th Cir. 1989)).

WFX argues that Sands was not its employee at the time of the
accident.[3] (ECF No. 64-4) (describing Sands as a "prospective
driver" or "candidate" throughout). Sands agrees, and consistently
testified that he did not consider WFX his employer at any point
before or after the accident. (ECF No. 64-3 at 2) (Q: "Now, on
July 13, 2019, the day of the accident . . . who was your employer?"
A: "I wasn't employed . . . I was going to orientation for Western
Flyer, but I wasn't hired yet."); (ECF No. 64-3 at 19) (Q: "Did
you list Western Flyer as a prior place of employment?" A: "I
didn't.") Other evidence supports both defendants' testimony.
WFX's invitation to orientation noted that the program was an
applicant's "1st step toward a rewarding career." (ECF No. 71-4 at
1.) WFX required prospective drivers to pass drug and alcohol
tests, as well as a driving test and practical examination, before
it could "move forward with a prospective driver." (ECF No. 64-4
at 3.) Internal WFX documents show that WFX determined Sands was

---

[3]The plaintiffs do not necessarily dispute that Sands was not
employed by WFX, but instead rest much of their argument on
alternative theories of vicarious liability. <u>See, e.g.,</u> (ECF No.
69 at 13) ("evidence arising through discovery suggests that WFX
did not formally 'hire' Sands as an employee. However, the Court's
analysis should not end there.") Since this statement is not
entirely clear on whether the plaintiffs concede that Sands was
not an employee, the court will fully examine the question.

"NOT ELIGIBLE FOR HIRE" upon learning of the accident, rather than
that he should be fired. (ECF No. 64-5). Sands did not receive any
kind of unemployment benefits from WFX upon being sent home, (ECF
No. 64-3 at 19), was not reimbursed for his meals, gas, hotel, or
original bus ticket, (id. at 18), and was not told where to eat or
where to stop along the way to Oklahoma City, (id. at 18-19). The
evidence does not demonstrate the "right to control the means and
manner of performance" that Tennessee courts and the Sixth Circuit
view as essential to the employer-employee relationship. Marie v.
American Red Cross, 771 F.3d 344, 356 (6th Cir. 2014).

There is no adequate countervailing evidence of employment to
establish a genuine dispute on this issue. See Bell, 351 F.3d at
247 ("entry of summary judgment is appropriate against a party who
fails to make a showing sufficient to establish the existence of
an element essential to that party's case"). WFX does not dispute
that it paid for the rental car involved in the accident, (ECF No.
64-3 at 8; ECF No. 64-4 at 10-11), and bought Sands a Greyhound
bus ticket home, (ECF No. 64-3 at 17; ECF No. 64-4 at 9.) The
company further welcomed Sands "to WFX family [sic]" when inviting
him to orientation. (ECF No. 71-4 at 1.) But without more, these
facts do not create a material dispute over whether an ongoing
employment relationship existed. Tennessee courts have found that
much greater entanglements do not confer "the actual control of

- 11 -

the work" necessary to form an employer-employee relationship. Tucker v. Sierra Builders, 180 S.W.3d 109, 112-13, 120-21 (Tenn. Ct. App. 2005) (only authorized builder of modular homes in town not an employee of modular home manufacturer, even where manufacturer employees helped assemble the "basic structure"); see also Beare Co. v. State, 814 S.W.2d 715, 718 (Tenn. 1991) (holding workers who were paid for the number of trucks they unloaded and who used company provided tools were independent contractors, not employees); Cole v. Woods, 548 S.W.2d 640, 648-49 (Tenn. 1977) (finding that owner-passengers in vehicles do not create master-servant relationships with drivers solely through providing their vehicle, even where the driver is "subject to the duty of obedience to the wishes of the owner-passenger as to such things as destination.") Other courts throughout the Sixth Circuit are in accord. See Herndon v. Torres, 791 F. App'x 547, 549-50 (6th Cir. 2019) (applying similar Ohio law to find a truck driver driving a company owned truck and following mandatory company time frames to be an independent contractor, not an employee); Holliday ex rel. Estate of Holliday v. Epperson, No. 02-1030-T, 2003 WL 23407498, at *2-3 (W.D. Tenn. Jul. 28, 2003) (no employer-employee relationship where the defendant used a company's log trailer with permission for a personal job, and had done multiple jobs for them in the past). WFX also points to similar cases from other states

- 12 -

that, while not binding for purposes of analyzing Tennessee law, feature persuasive applications of general common law agency principles. In these cases, the courts of two separate states found that no employer-employee relationship existed where job applicants engaged in some tortious activity while driving somewhere to satisfy some employer-mandated, pre-hiring requirement. See Wilken v. Van Sickle, 507 P.2d 1150, 1151-52 (Or. 1973) (no vicarious liability for prospective employee's car accident on the way to deliver necessary pre-employment documents); McLean v. St. Regis Paper Co., 496 P.2d 571, 574-75 (Wash. Ct. App. 1972) (no vicarious liability for prospective employee's car accident on the way to mandatory pre-hire physical). While the plaintiffs take issue with WFX's citations to cases from "the Pacific Northwest," (ECF No. 71 at 9), persuasive authority "such as decisions by our district courts, unpublished decisions of the Sixth Circuit, or *any* decisions from outside our circuit" are often helpful "when binding decisions on the contested issue are scarce" or where the case "addresses exactly, or almost exactly the same issue as the court confronts." Smith v. Astrue, 639 F. Supp. 2d 836, 843 (W.D. Mich. 2009) (emphasis in original).[4]

─────────────────

[4]The plaintiffs contend that both Wilken and McLean are factually distinguishable as well. (ECF No. 71 at 9.) McClean dealt with a prospective employee driving a friend's car to a required physical examination, and Wilken involved a prospective employee on the way

Beyond the right to control, the other factors considered under Tennessee law also weigh in WFX's favor. There was no method of payment, since Sands was not paid by WFX at any point. Sands was free to leave for Oklahoma at any point, take any route, and stop as many times as he needed to, allowing him to control his "work hours" and method of performance. See Herndon, 791 F. App'x at 549-50 (merely being told to arrive at a destination on time in a company-owned truck did not elevate defendant above being an independent contractor). Sands was free to not attend the interview at all, or to interview for other positions without informing WFX. While WFX arguably provided the "tools" for the "work" at issue here, WFX did not have the right to control Sands's route, could not command him to attend, and did not pay him for his time. In all aspects, WFX treated Sands as a potential employee attending the second round of its hiring process. Under Tennessee law, the evidence of control here is simply inadequate to establish an employer-employee relationship. Even viewing the evidence in the

---

to drop off the results of a medical examination. Neither case involved the exact scenario at issue here. But such is the nature of precedent. Consequently, these cases merely inform the court's reasoning rather than dictate it entirely. Both apply general agency principles to prospective employees involved in car accidents while fulfilling some pre-employment mission, and neither found an employer-employee relationship existed. The court finds their reasoning persuasive.

light most favorable to the plaintiffs, no reasonable jury could find Sands was an employee of WFX under Tennessee law.

## C.   General Agency Principles

The plaintiffs urge that "the Court's analysis should not end" at the employer-employee relationship. They advance alternative theories of vicarious liability based on more general agency principles. See White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 722 n.10 (Tenn. 2000) ("Agency theory, by way of contrast [with private employment], recognizes that vicarious liability may properly arise under some situations even outside the scope of private employment.") (citing Parker v. Warren Cty. Util. Dist., 2 S.W.3d 170, 177 (Tenn. 1999)).

Under Tennessee agency law, "an agency relationship does not require an explicit agreement, contract, or understanding between the parties." White, 33 S.W.3d at 723. Whether an agency exists is a question of fact, and "whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreements or acts," rather than by considering only what the parties intended. McCay v. Mitchell, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970). Broadly speaking, agency includes any relationship where "the principal authorizes the agent to act for the principal's benefit but at the same time retains the right to control the agent's conduct." Hussmann Refrigeration, Inc. v.

South Pittsburg Assocs., 697 S.W.2d 588, 592 (Tenn. Ct. App. 1985)
However, "the right of control is not necessarily as important as
the principal's exercise of actual control over the agent." Bowman
v. Benouttas, 519 S.W.3d 586, 597 (Tenn. Ct. App. 2016) (quoting
White, 33 S.W.3d at 723). Principals may be liable for an agent's
tortious act wherever the act is within the scope of the agency,
id., or wherever the act was "commanded or directed by the
principal." White, 33 S.W.3d at 723 (citing Kinnard v. Rock City
Const. Co., 286 S.W.2d 352, 354 (Tenn. Ct. App. 1955)). "No hard
and fast rule" exists for determining whether an agency exists or
what the scope of that agency may be; instead, "each case is to be
decided largely upon its own facts." Leeper Hardware Co. v. Kirk,
434 S.W.2d 620, 623-24 (Tenn. Ct. App. 1968).

    To state the obvious, the plaintiffs do not allege that WFX
commanded or directed Sands to wreck his rental car. They point to
a list of facts they claim show WFX's "right of control (and the
exercise of that control) over Davarious Sands's participation in
orientation at Western Flyer Express, including travel to Oklahoma
City." (ECF No. 71 at 12.) Almost all these facts relate either to
the rental car or WFX's control over the orientation process
itself. See, e.g., (ECF No. 71 at 12) ("WFX held the orientation
at their headquarters in Oklahoma City . . . WFX set the start
date and time for orientation . . . WFX selected the hotel where

Sands was expected to stay during orientation.") Thus, the plaintiffs argue that Sands acted as WFX's agent by participating in its orientation, and through implication, by traveling there. WFX must demonstrate that no reasonable jury could find that Sands was operating within the scope of an agency relationship with WFX during the crash.

WFX has met this burden: no reasonable jury could find that Sands was WFX's agent at the time of the crash. The only connections between Sands and WFX at the time of the accident were: 1) WFX had invited Sands to attend orientation, and 2) WFX had paid for a rental car for Sands to drive there. This is insufficient to create an agency relationship under Tennessee law. At the time of the accident, WFX exercised no actual control over Sands; the company only told him to show up at the orientation by a certain date and time. WFX did not control Sands's conduct on the drive, what route he took, where he stopped, or where he slept along the way. Sands could have refused to go or could have used a different car without any repercussions. While WFX received a benefit from hiring new drivers, it did not necessarily receive a benefit merely from Sands's attendance. (ECF No. 71-2 at 28.) Further, Sands acted not for WFX's benefit in attending the orientation, but for his own. (ECF No. 71-3 at 26; ECF No. 74 at 1) (Q: "Why – what possessed you to employ for a job with Western

Flyer?" A: "I heard that their lease-purchase program was better than the one that I was in.")

Even assuming that Sands was an agent "for the limited purpose of interviewing for a job," no reasonable jury could find that WFX was liable for his actions here. (ECF No. 64-2 at 13.) The Restatement (Second) of Agency provides guidance on situations where "non-servant agents" cause harm through "negligent physical conduct." Restatement (Second) of Agency, Section 250, at 549.[5] The Restatement explains that "a principal is not liable for physical harm" caused by a non-servant agent's negligence "if he neither intended nor authorized the result nor the manner of performance, unless he was under a duty to have the act performed

---

[5]The "leading Tennessee Court of Appeals case on the issue of course and scope of employment" rested largely on application of the Restatement, and Tennessee courts consistently consult the Restatement when applying Tennessee agency law. Bowman v. Bulkmatic Transport Co., Inc., 739 F. Supp. 2d 1028, 1035 n.5 (E.D. Tenn. 2010); Tyus v. Pugh Farms Inc., 2012 WL 938509, at *8 (Tenn. Ct. App. Mar. 19, 2012) ("In cases involving the respondeat superior doctrine, Tennessee courts have turned to the Restatement (Second) of Agency to determine whether an act was within the scope of employment in a particular case.") (internal quotation marks removed); see, e.g., Tennessee Farmers Mut., 840 S.W.2d at 937. The Tennessee Supreme Court has specifically cited Section 250 "with approval" in the past and directly applied it. See Nat. Life & Acc. Ins. Co. v. Morrison, 162 S.W.2d 501, 504 (Tenn. 1942) ("We shall presently consider whether or not the facts of this case bring it within the statement of the rule in the above [Section 250] from Restatement of Law of Agency"). Sands would be considered a non-servant agent under any possible agency relationship, since the court finds he was not an employee of WFX at the time of the accident. Supra Section II.B.

- 18 -

with due care." Id. The duty to perform with due care applies where "the contract directly requires the performance of work inherently or intrinsically dangerous, however skillfully done." Marshalls of Nashville, Tennessee, Inc. v. Harding Mall Associates, Ltd., 799 S.W.2d 239, 243 (Tenn. Ct. App. 1990) (quoting Cooper v. Metropolitan Government, Etc., 628 S.W.2d 30, 32 (Tenn. Ct. App. 1981)). Essentially, "the collateral negligence of the contractor" is not what causes the danger in an inherently dangerous activity; the danger "must result directly from the work to be done," regardless of how safely the work is performed. Id. at 243.

Here, there are no material facts to suggest that WFX intended or authorized Sands's car accident. The facts instead show that WFX refused to hire Sands upon learning of the accident and quickly released him from the orientation program. (ECF No. 64-5.) Under the Restatement then, WFX can only be liable for Sands's negligent conduct if it "was under a duty to have an act performed with due care." Restatement (Second) of Agency, Section 250, at 549. In this inquiry, being a "non-servant agent" would put Sands in a similar, if not identical, position to an independent contractor. Restatement, Section 250, a, at 549-50 ("in their movements and their control of physical forces, [non-servant agents] are in the relation of independent contractors to the principal"). Under Tennessee law, it is well established that an independent

contractor's negligence is typically not imputed to their principal. See Fed. Ins. Co. v. Winters, 354 S.W.2d 287, 295 (Tenn. 2011) ("employers are generally not liable for the negligence of their independent contractors"); Hutchison v. Teeter, 687 S.W.2d 286, 288 (Tenn. 1985) (noting the "general rule of non-liability for the actions of an independent contractor"). As stated above, the exception to this general rule is where the principal is under a "duty to have [the] act performed with due care," or when the work to be done is inherently dangerous. Restatement (Second) of Agency, Section 250, at 549. But driving a car is not an inherently dangerous activity as a matter of law. See, e.g., Doe v. Johnson, 817 F. Supp. 1382, 1399 (W.D. Mich. 1993) ("driving an automobile is not 'inherently dangerous'"); Taylor v. Arnold, 2 Tenn.App. 246, 251 (Tenn. Ct. App. 1925) ("an automobile is not an inherently dangerous instrumentality") (citing Leach v. Asmon, 172 S.W. 303, 304 (Tenn. 1914)). No reasonable jury could find that Sands was an agent of WFX or that, even if he was, WFX would be liable for his negligence.

**D.  Partnership**

The plaintiffs also argue that Sands and WFX created "a partnership [] implied by the circumstances and actions of the parties." (ECF No. 71 at 15.) Under Tennessee law, a partnership is "the association of two or more persons to carry on as co-

owners of a business for profit." Tenn. Code. Ann. § 61-1-202(a); Benouttas, 519 S.W.3d at 600. Common to a partnership is profit sharing amongst the parties, or circumstances that indicate a combination of "property, labor, skill, experience, or money" to generate shared profits. Bass v. Bass, 814 S.W.2d 38, 41 (Tenn. 1991). A typical partnership is a "more or less permanent business arrangement." Fain v. O'Connell, 909 S.W.2d 790, 792 (Tenn. 1995). Implied partnerships must be shown by "clear and convincing evidence." Tanner v. Whiteco, L.P., 337 S.W.3d 792, 798 (Tenn. Ct. App. 2010).

No reasonable jury could find that Sands and WFX formed a partnership. There is no indication of intent to co-own a business or to share any profits. The plaintiffs have not cited to anything in the record that would indicate such an expansive, binding arrangement between the parties. Sands and WFX never combined any property, labor, skill, or money. There is not even a "scintilla of evidence" for such a theory, let alone the clear and convincing evidence required for a reasonable jury to find such a partnership. Bell, 351 F.3d at 247.

### E.  Joint Venture

Finally, the plaintiffs argue that WFX could be vicariously liable under a joint venture theory. Under Tennessee law, a joint venture is "an association of persons with intent, by way of

contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge[.]" Fain, 909 S.W.2d at 793 (quoting Spencer Kellogg & Sons, Inc. v. Lobban, 315 S.W.2d 514, 520 (Tenn. 1958)). Any joint venture thus requires a common purpose, some agreement between parties, and "an equal right on the part of each party to control both the venture as a whole and any relevant instrumentality." Benouttas, 519 S.W.3d at 599. Unlike a partnership, a joint venture "is something more or less temporary – something gone into to more or less take a gamble on this proposition or that, or as they say sometimes, 'take a flier.'" Fain, 909 S.W.2d at 793 (quoting Lobban, 315 S.W.2d at 520).

The plaintiffs argue that WFX and Sands shared a common business purpose in the orientation, in that WFX "stood to gain from this by obtaining access to another driver" and Sands "was given the opportunity to further and improve his career." (ECF No. 71 at 19.) Assuming these two distinct purposes could be considered common, the record makes clear that the two parties did not have equal rights of control. WFX set the times and dates for the orientation, controlled who could attend, set the event's agenda, and unilaterally dismissed Sands upon learning of the accident. (Id. at 12.) In response, the plaintiffs offer only that Sands

"had hands on control of the Dodge Charger during the trip to Oklahoma City." (Id. at 19.) But driving to an interview does not give one the right to the job. Sands had no control over the orientation and was told to leave within fifteen to twenty minutes of arriving. It is clear he did not have "an equal right . . . to control [] the venture *as a whole*." Benouttas, 519 S.W.3d at 599 (emphasis added). No reasonable jury could find that a joint venture existed between WFX and Sands.

### III. CONCLUSION

Based on the above, the court orders that the Motion for Summary Judgment be GRANTED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 8, 2021
Date

- 23 -